IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-795

No. COA21-688

Filed 6 December 2022

Brunswick County, No. 18 CRS 681

STATE OF NORTH CAROLINA

v.

DAVID RAEFORD TRIPP, JR.

Appeal by Defendant from order entered 28 June 2021 by Judge Jason C. Disbrow in Brunswick County Superior Court. Heard in the Court of Appeals 14 September 2022.

*Attorney General Joshua H. Stein, by Assistant Attorney General Nicholas R. Sanders, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Amanda S. Zimmer, for Defendant-Appellant.*

WOOD, Judge.

¶ 1 Under the principles of double jeopardy and due process, may Defendant be prosecuted for murder twenty-one years after his conviction for felony child abuse now that the child has succumbed to his injuries? We hold that he may.

## I. Background

¶ 2 On 12 April 1997, David, a fifteen-month-old child, was taken to the Columbia Brunswick Hospital by ambulance. The emergency room doctor "observed that the

child was not breathing, that he had a head fracture, abnormal pupil response, facial bruising, deformity on an arm and a leg, and a burned area in the diaper region, and that the child was having seizures." *State v. Noffsinger*, 137 N.C. App. 418, 419, 528 S.E.2d 605, 607 (2000). A pediatrician who treated David's injuries determined that he suffered from Battered Child Syndrome based on her "physical findings . . . and not finding a sufficient explanation for any of the injuries as had been described." According to the pediatrician, David would "never" be able to live independently and that "the entire part of his brain that involves learning, thinking, maturing, [and] developing normally ha[d] been destroyed." David barely survived and was left unable to function on his own without assistance.

¶ 3        In 1998, David Raeford Tripp, Jr. ("Defendant") entered an *Alford* plea to four counts of felony child abuse. Defendant was the boyfriend of the abused child's mother, Robin Noffsinger, who was also indicted for felony child abuse charges as a result of the child's injuries. David suffered severe fractures to his skull, spine, limbs, and ribs; second- and third-degree burns to his buttocks and genitals; missing hair; and multiple bruises, cuts, and puncture wounds over his body, among others. The burns resulted in permanent nerve damage, and at the time of the plea, David was living in a long-term care home for children.

¶ 4        As part of the plea agreement, the State agreed to dismiss an indictment for malicious maiming, a Class C felony. The parties also agreed that the

State will not use Defendant's guilty plea in either a direct or impeaching manner in any subsequent prosecution of Defendant arising out of the acts and transactions that form the basis of the charges to which the Defendant is pleading guilty except the State may use Defendant's conviction herein as allowed by Rule 609.

Defendant reserves the right to raise a defense of former or double jeopardy in any subsequent prosecution of Defendant based on the acts or transactions forming the basis of the charges to which Defendant is pleading guilty.

The State reserves the right to proceed against the Defendant at any later date for any and all criminal charges for which the law allows.

¶ 5 The trial court sentenced Defendant to active sentences for three counts of felony child abuse and a suspended sentence on the fourth count. He completed his sentences in 2008. David lived a disabled life for almost twenty-one years before allegedly succumbing to his injuries and dying in 2018. The State now seeks to prosecute Defendant for murder.

¶ 6 Defendant was indicted for first-degree murder on 21 May 2018. Because the indictment related to Defendant's previous offenses, he moved to dismiss the murder charge, alleging prosecution for first-degree murder would violate his right to be free from double jeopardy and his right to due process. The trial court denied his motion to dismiss on 28 June 2021. Defendant appealed this denial by petition for writ of certiorari. On 26 August 2021, this Court granted Defendant's petition for writ of certiorari for the limited purpose of reviewing the trial court's denial of Defendant's

Motion to Dismiss.

## II. Jurisdiction

¶ 7 Because the denial of Defendant's motion to dismiss preceded final judgment on the merits, this appeal is interlocutory. *Waters v. Qualified Pers., Inc.*, 294 N.C. 200, 207, 240 S.E.2d 338, 343 (1978). We may properly hear interlocutory appeals upon writ of certiorari. N.C. Gen. Stat. § 15A-1444(g) (2021). "Rule 21 of our appellate rules provides that a '*writ of certiorari* may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when . . . no right of appeal from an interlocutory order exists.' " *Rauch v. Urgent Care Pharmacy, Inc.*, 178 N.C. App. 510, 515, 632 S.E.2d 211, 216 (2006) (quoting N.C. R. App. P. 21(a)(1)). As this Court has previously stated, "the consequences of rejecting Defendant's double jeopardy argument are surely serious." *State v. Smith*, 267 N.C. App. 364, 367, 832 S.E.2d 921, 925 (2019). Defendant filed a Petition for Writ of Certiorari on 29 July 2021. We allowed the petition on 26 August 2021.

## III. Standard of Review

¶ 8 We review "the trial court's denial of a motion to dismiss *de novo.*" *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). Likewise, we review "conclusions of law pertaining to a constitutional matter de novo." *State v. Bowditch*, 364 N.C. 335, 340, 700 S.E.2d 1, 5 (2010).

## IV.    Double Jeopardy

¶ 9        "No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . ."  U.S. Const. amend. V.

¶ 10        This right against double jeopardy provides several protections.  "It protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 2076, 23 L. Ed. 2d 656, 664-65 (1969).  We address the second of these protections as it is undisputed that Defendant's prior felony child abuse convictions and the current first-degree murder indictment arise out of the same incident that occurred in 1997.

¶ 11        Determining if a second prosecution is for the same offense, the U.S. Supreme Court relies on the Same-Elements Test of *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932).  *United States v. Dixon*, 509 U.S. 688, 696, 113 S. Ct. 2849, 2856, 125 L. Ed. 2d 556, 568 (1993).  Two offenses for the same conduct are considered the same offense under this test unless "each offense contains an element not contained in the other." *Id.*  Hence, lesser-included and greater offenses are treated as the same. *Brown v. Ohio*, 432 U.S. 161, 169, 97 S. Ct. 2221, 2227, 53 L. Ed. 2d 187, 196 (1977).  For example, a contempt prosecution for the disruption of judicial business and a subsequent prosecution for the criminal assault

that was part of the disruption fail the Same-Elements Test "because the contempt offense did not require the element of criminal conduct, and the criminal offense did not require the element of disrupting judicial business." *Dixon*, 509 U.S. at 697, 113 S. Ct. at 2856, 125 L. Ed. 2d at 568. Thus, both offenses may be prosecuted without violating the Double Jeopardy Clause.

¶ 12    Our State's felony murder rule allows for the conviction of first-degree murder when a victim is killed "in the perpetration or attempted perpetration of any arson, rape or a sex offense, robbery, kidnapping, burglary, or other felony committed or attempted with the use of a deadly weapon." *State v. Watson*, 277 N.C. App. 314, 2021-NCCOA-186, ¶ 23 (quoting N.C. Gen. Stat. § 14-17). At the time of Defendant's original sentencing in 1997, a non-parent committed felony child abuse when the "person providing care to or supervision of a child less than 16 years of age . . . intentionally inflicts any serious physical injury upon or to the child or . . . intentionally commits an assault upon the child which results in any serious physical injury." N.C. Gen. Stat. § 14-318.4(a) (1997). The State concedes and we agree that, under the Same-Elements Test, Defendant's conviction of felony child abuse appears on its face to be a lesser-included offense of felony murder and should be treated as the same offense unless an exception applies. We now consider the exceptions.

¶ 13    One exception to the general prohibition of placing individuals in double jeopardy would have this Court uphold the prosecution of a greater- or lesser-included

offense if our legislature specifically intends to treat the offense at issue as a separate offense from others. The U.S. Supreme Court illustrated this exception in *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S. Ct. 673, 678, 74 L. Ed. 2d 535, 542 (1983) when it upheld the prosecution of both robbery and armed criminal action. Though one crime contained the same elements as that of the other such that prosecution for both generally ought to have been prohibited, the Court found no error with the prosecution because the legislature provided that "[t]he punishment imposed pursuant to this subsection shall be in addition to any punishment provided by law for the crime committed by, with, or through the use, assistance, or aid of a dangerous or deadly weapon." *Hunter*, 459 U.S. at 362, 103 S. Ct. at 676, 74 L. Ed. 2d at 539. Similarly, this Court has held "[w]hen a defendant is tried under two different statutes for the same conduct, 'the amount of punishment allowable under the double jeopardy clause . . . is determined by the intent of the legislature.' " *State v. Barksdale*, 237 N.C. App. 464, 473, 768, S.E.2d 126, 132 (2014) (quoting *State v. Freeland*, 316 N.C. 13, 21, 340 S.E.2d 35, 39 (1986)).

¶ 14        This legislative intent exception has only ever been utilized with *concurrent* sentencing and not *subsequent* prosecutions as is the case here. Though our legislature identifies felony child abuse and murder as separate crimes "even when both offenses arise out of the same conduct," *State v. Elliott*, 344 N.C. 242, 278, 475 S.E.2d 202, 218 (1996), we refrain, in this case, from considering whether the

legislature's authorization to prosecute a single occurrence as two distinct crimes applies to a subsequent prosecution scenario when a more established exception exists.

¶ 15    The more established exception which applies in this case is found in *Diaz v. United States*. 223 U.S. 442, 449, 32 S. Ct. 250, 251, 56 L. Ed. 500, 503 (1912). Under the *Diaz* Exception, a defendant subsequently may be prosecuted for a separate offense if a requisite element for that offense was not an element of the offense charged during the defendant's prior prosecution. *Id.* For example, as in *Diaz*, a defendant convicted of assault and battery may subsequently be tried for murder if the victim later dies from his injuries. *Id.*

¶ 16    Here, the State could not have prosecuted Defendant for murder in 1998 because the abused child, David, had not yet died. To be convicted of murder, one must be proven guilty of "(1) the unlawful killing, (2) of another human being, (3) with malice." *State v. Coble*, 351 N.C. 448, 449, 527 S.E.2d 45, 46 (2000) (citing N.C. Gen. Stat. § 14-17). It was not until David died in 2018, allegedly from his injuries, that the missing element necessary to pursue a murder indictment manifested. This scenario triggers the *Diaz* Exception. Where the perpetrator in *Diaz* was prosecuted for assault and battery before the victim's death and for murder after the victim's death, Defendant here was prosecuted for felonious child abuse before the victim's death and is now being prosecuted for murder after the victim's death.

¶ 17        Notwithstanding Defendant's exposure to prosecution under the federal scheme, Defendant asks us to consider whether our State affords greater protection from double jeopardy than the U.S. Constitution as applied to the facts of this case. Generally, States are free to grant greater protections to its citizens than afforded under the U.S. Constitution. *State v. Jackson*, 348 N.C. 644, 648, 503 S.E.2d 101, 103 (1998). Accordingly, Defendant urges this Court to adopt the added protection of the Same Conduct Test used in the U.S. Supreme Court case of *Grady v. Corbin.* Under this test, the Double Jeopardy Clause stands as a bar against "a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Grady v. Corbin*, 495 U.S. 508, 510, 110 S. Ct. 2084, 2087, 109 L. Ed. 2d 548, 557 (1990). The U.S. Supreme Court later overturned this test in *United States v. Dixon.* 509 U.S. 688, 704, 113 S. Ct. 2849, 2860, 125 L. Ed. 2d 556, 573 (1993). In *Dixon*, the Court ruled that the test "is wholly inconsistent with earlier Supreme Court precedent and with the clear common-law understanding of double jeopardy." *Id.* Citing the Court's reasoning in *Dixon*, the North Carolina Supreme Court refused to adopt it. *State v. Gay*, 334 N.C. 467, 490, 434 S.E.2d 840, 853 (1993). Bound by these precedents, we must not adopt the Same Conduct Test here. *See Cannon v. Miller*, 313 N.C. 324, 324, 327 S.E.2d 888, 888 (1985) (stating this Court lacks authority to overrule decisions of our Supreme Court).

¶ 18        Defendant also urges this Court not to apply the *Diaz* Exception to our State's tradition of prohibiting double jeopardy. Here, too, the North Carolina Supreme Court has spoken. *State v. Meadows* fully recognizes the *Diaz* Exception as applied to our State's application of the principles barring double jeopardy. 272 N.C. 327, 331, 158 S.E.2d 638, 641 (1968). In *Meadows*, the defendant pleaded guilty to felonious assault before the victim died. *Id.* at 331, 158 S.E.2d at 640. After the victim died, the State sought to prosecute the defendant for murder. *Id.* Our Supreme Court cited *Diaz* in allowing the prosecution. *Id.* at 331, 158 S.E.2d at 641.

¶ 19        Defendant points out that *Meadows* was decided before our State disposed of the common-law year-and-a-day rule. *See State v. Vance*, 328 N.C. 613, 616-19, 403 S.E.2d 495, 498-99 (1991) (outlining the history of the year-and-a-day rule before abrogating it). Further, our legislature has not enacted a statute of limitations for the prosecution of felonies. *State v. Johnson*, 275 N.C. 264, 271, 167 S.E.2d 274, 279 (1969). Yet, these conditions do not affect this analysis of double jeopardy protections. Our legislature authorizes the prosecution of felonies years after their commission, and our constitutional safeguards permit it. *See State v. Barnett*, 223 N.C. App. 450, 459, 734 S.E.2d 130, 137 (2012) (exampling a felony conviction over twenty-five years after the offense).

## V.    Substantive Due Process

¶ 20        In the absence of double jeopardy protection, the year-and-a-day rule, or an

applicable statute of limitation, Defendant calls upon the aid of substantive due process to contend that it is a violation of his constitutional rights to prosecute him for first-degree murder twenty-one years after being convicted of felony child abuse for the same act. We are unpersuaded.

¶ 21        Substantive due process developed to "prevent[] the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *State v. Womble*, 277 N.C. App. 164, 2021-NCCOA-150, ¶ 79 (quoting *State v. Thompson*, 349 N.C. 483, 491, 508 S.E.2d 277, 282 (1998)). This doctrine arose from the Fourteenth Amendment of the U.S. Constitution and has been interpreted to exist within our State's constitutional variant—the Law of the Land Clause. *Id.* at ¶¶ 79, 82.

¶ 22        The U.S. Supreme Court has "decline[d] . . . to hold that the Due Process Clause provides greater double-jeopardy protection than does the Double Jeopardy Clause." *Sattazahn v. Pennsylvania*, 537 U.S. 101, 116, 123 S. Ct. 732, 742, 154 L. Ed. 2d 588, 602 (2003). Since we hold that the subsequent prosecution of Defendant is permitted under the U.S. Constitution's Double Jeopardy Clause, we likewise hold that it does not violate the Due Process Clause of the Fourteenth Amendment. We now turn our attention to our State's Law of the Land Clause.

¶ 23        Article I, Section 19, of our State's Constitution reads,

No person shall be taken, imprisoned, or disseized of his

> freehold, liberties, or privileges, or outlawed, or exiled, or
> in any manner deprived of his life, liberty, or property, but
> by the law of the land. No person shall be denied the equal
> protection of the laws; nor shall any person be subjected to
> discrimination by the State because of race, color, religion,
> or national origin.

"The term 'law of the land' as used in Article I, Section 19, of the Constitution of North Carolina, is synonymous with 'due process of law' as used in the Fourteenth Amendment to the Federal Constitution." *In re Moore*, 289 N.C. 95, 98, 221 S.E.2d 307, 309 (1976). We note, however, that the U.S. Supreme Court's interpretation of the Due Process Clause is "not controlling[] authority for interpretation of the Law of the Land Clause." *Singleton v. N.C. HHS*, ___ N.C. App. ___, 2022-NCCOA-412, ¶ 29 (quoting *Evans v. Cowan*, 132 N.C. App. 1, 6, 510 S.E.2d 170, 174 (1999)). For instance, "[o]ur Supreme Court has read our Law of the Land Clause to provide greater protection than the Due Process Clause of the Fourteenth Amendment." *Womble*, 277 N.C. at ¶ 82. It protects "against arbitrary legislation, demanding that the law shall not be unreasonable, arbitrary or capricious, and that the law be substantially related to the valid object sought to be obtained." *State v. Joyner*, 286 N.C. 366, 371, 211 S.E.2d 320, 323 (1975).

¶ 24 Defendant does not cite to a specific law that offends the doctrine of substantive due process but asserts generally that Defendant's "right to due process would be violated if he is forced to pay his debt to society twice." To clarify, the State does not

seek to prosecute Defendant once more for the crime of felony child abuse. Today, it seeks his prosecution for the crime of first-degree murder. Perhaps Defendant's "debt" for felony child abuse has been paid, but we look to whether a potential "debt" for murder is due. We therefore conclude the trial court's denial of Defendant's Motion to Dismiss does not violate Defendant's fundamental rights as protected under the doctrine of substantive due process.

## VI.    Conclusion

The *Diaz* Exception permits the subsequent prosecution of a greater-included offense if a fact necessary for that offense was not present during Defendant's prior prosecution. We hold that the *Diaz* Exception applies to the facts of this case and that substantive due process allows for the prosecution of Defendant for first-degree murder. The trial court's denial of Defendant's motion to dismiss is affirmed.

AFFIRMED.

Judges HAMPSON and GRIFFIN concur.